Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

# UNITED STATES DISTRICT COURT SEALED

for the

District of Connecticut

Civil Division

MAR 22 2022
FILED-USDC-CT-NEW HAVEN

| | |
|---|---|
| Henry W. Pascarella | Case No. 22CV423(VAB) |
| Averardo P. Pascarella | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Jury Trial: *(check one)* ☒ Yes ☐ No

Alfred J. Jennings, Jr.

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

I.      **The Parties to This Complaint**                          SEALED

A.      **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Henry W. Pascarella |
| Address | 200 Leeder Hill Drive, Apt. 307 |
| | Hamden     CT     06837 |
| | *City*     *State*     *Zip Code* |
| County | New Haven County |
| Telephone Number | NB (Mr. Pascarella is "unable to manage his own affairs") |
| E-Mail Address | contact: A.Pascarella 1-917-771-2511 aldo@pascarellalaw.com |

B.      **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Alfred J. Jennings, Jr. |
| Job or Title *(if known)* | |
| Address | 112 Old Mill Road |
| | Fairfield     CT     06824 |
| | *City*     *State*     *Zip Code* |
| County | Fairfield |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☒ Individual capacity   ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Address | |
| | *City*     *State*     *Zip Code* |
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity   ☐ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Defendant No. 3

Name       SEALED

Job or Title *(if known)*

Address

|  | City | State | Zip Code |
|---|---|---|---|

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity    ☐ Official capacity

Defendant No. 4

Name

Job or Title *(if known)*

Address

|  | City | State | Zip Code |
|---|---|---|---|

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity    ☐ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Equal protection under law. Fair trial.

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

SEALED

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Acted as an employee of the State of Connecticut, Judicial Branch

## III.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

Stamford, Connecticut

B.   What date and approximate time did the events giving rise to your claim(s) occur?

2009-2022

C.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

While never revealing his prior professional affiliation with a law firm opposed to Henry W. Pascarella in litigation since 1974, Jennings issued a series of judicial decisions enabling a non-performing counterparty to a contract to maintain unlawful liens on a commercial property for 19 years and caused other damage while acting under color of state law and in the employment of the State of Connecticut.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

IV.   **Injuries**



    If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

    Money and other damages to be claimed in future amended complaint.

V.   **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

    Equitable and other relief to be sought in future amended comlaint.

## VI.    Certification and Closing

SEALED

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            March 21, 2022

Signature of Plaintiff        (APPEARING PRO SE)
Printed Name of Plaintiff    Henry W. Pascarella

### B.    For Attorneys

Date of signing:            March 21, 2022

Signature of Attorney        (APPEARING PRO SE)
Printed Name of Attorney    Averardo P. Pascarella
Bar Number                420371
Name of Law Firm          The Pascarella Law Firm PC
Address                   200 Pemberwick Road, Box 1

| | | |
|---|---|---|
| Greenwich | CT | 06831 |
| City | State | Zip Code |

Telephone Number          1-917-771-2511 cell
E-mail Address            aldo@pascarellalaw.com

SEALED

# EXHIBIT A
# LIABILITY

ZELDES, NEEDLE & COOPER
ATTORNEYS AT LAW

JACOB D. ZELDES
ELAINE S. AMENDOLA
CHARLES M. NEEDLE
ROBERT S. COOPER
L. DOUGLAS SHRADER
LAWRENCE W. KANAGA III
ALFRED J. JENNINGS, JR.

STUART BEAR

SEALED

LAFAYETTE PLAZA TOWER
333 STATE STREET
BRIDGEPORT, CONNECTICUT 06604

TELEPHONE (203) 333-9441

24 May 1974

Magill, Badger, Fisher
Cohen & Barnett
49 West Putnam Avenue
Greenwich, Connecticut

Re:  Sara Farley Loken and Geraldine B. Farley vs.
     Magill, Badger, Fisher, Cohen & Barnett and
     Henry W. Pascarella

Gentlemen:

We have been retained by Mrs. Sara Loken and Mrs. Geraldine
Farley in connection with a claim against the firm of Magill,
Badger, Fisher, Cohen & Barnett and Henry W. Pascarella.
This claim arises out of the actions of Magill, Badger,
Fisher, Cohen & Barnett and Mr. Pascarella in the representation
of Mrs. Loken and Mrs. Farley during and subsequent to the
winding up of the Estate of Colvin Farley.

We enclose a draft copy of the complaint which we intend to
serve.  If you would like to discuss this matter with us at
our office prior to the service of the complaint, please
telephone us so that we can set up a mutually convenient
time.

Very truly yours,


Charles M. Needle
CMN/rr
enc.
cc:  Henry W. Pascarella, Esq.

RECEIVED
MAY 28 1974
M.B.F.C. AND B.

SEALED

IN THE

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SARA FARLEY LOKEN,<br>GERALDINE B. FARLEY,<br><br>Plaintiffs<br><br>v.<br><br>HENRY W. PASCARELLA, Individually and<br>DANIEL B. BADGER, JOSEPH W. BARNETT, JR.,<br>CHARLES S. BRADFORD, BRUCE F. COHEN,<br>EVERETT FISHER, BRADFORD S. MAGILL,<br>DONAT C. MARCHAND, MILES F. McDONALD, JR.,<br>HENRY W. PASCARELLA, DUNCAN C. SMITH d/b/a<br>MAGILL, BADGER, FISHER, COHEN & BARNETT,<br><br>Defendants | CIVIL ACTION<br>NO. |

COMPLAINT

Applicable to All Counts

1.  Plaintiff Sara Farley Loken is a citizen of the State of Maryland.

2.  Plaintiff Geraldine B. Farley is a citizen of the State of Maryland.

3.  Defendant Henry W. Pascarella is a citizen of the State of Connecticut.

4.  Defendants Daniel B. Badger, Joseph W. Barnett, Jr., Charles S. Bradford, Bruce F. Cohen, Everett Fisher, Bradford S. Magill, Donat C. Marchand, Miles F. McDonald, Jr., Henry W. Pascarella, Duncan C. Smith are citizens of the State of Connecticut.

SEALED

5.   The amount in controversy exceeds, exclusive of interest and costs, the sum of Ten Thousand ($10,000.00) Dollars.

6.   Defendant Henry W. Pascarella is an attorney licensed to practice law in the State of Connecticut.

7.   At all times material to this complaint defendant Henry W. Pascarella was engaged in the practice of law and was a partner in a partnership of practicing attorneys doing business as Parker, Badger and Fisher, and/or Magill, Badger, Fisher, Cohen & Barnett.

8.   Defendants Daniel B. Badger, Joseph W. Barnett, Jr., Charles S. Bradford, Bruce F. Cohen, Everett Fisher, Bradford S. Magill, Donat C. Marchand, Miles F. McDonald, Jr., Henry W. Pascarella, Duncan C. Smith are attorneys, licensed to practice law in the State of Connecticut and are partners in a partnership of practicing attorneys doing business as Magill, Badger, Fisher, Cohen & Barnett.

9.   Magill, Badger, Fisher, Cohen & Barnett is a successor partnership to Parker, Badger & Fisher and each individual partner of the successor partnership is, pursuant to §34-51, §34-52, §34-53 and §34-79 Conn. Gen. Stat. (1958 Rev. as amended) jointly and severally liable to plaintiffs for the damages, losses and injuries hereafter set forth.

FIRST COUNT — BREACH OF FIDUCIARY DUTY

10.   During the month of May, 1969 plaintiffs engaged the services of defendant Henry W. Pascarella and the firm of Parker,

— 2 —

SEALED

Badger and Fisher to represent them in their respective claims against the estate of Colvin Farley.

11.   Plaintiffs executed a "contingent fee contract" with the firm of Parker, Badger and Fisher, acting by defendant Henry W. Pascarella, in which the attorneys' remuneration for services rendered was to be determined on the basis of amounts recovered on behalf of plaintiffs from the estate of Colvin Farley.

12.   In consideration of this agreement for compensation, defendant Henry W. Pascarella acting for the firm of Parker, Badger and Fisher, undertook, as an attorney, to represent and protect all plaintiffs' rights and interests in the estate of Colvin Farley.

13.   Colvin Farley was the father of plaintiff Sara Farley Loken, and during his lifetime, and prior to their divorce, had been the husband of plaintiff Geraldine B. Farley.

14.   Jane B. Farley was the second wife and widow of Colvin Farley and was the Executrix of his estate, having been so designated under the last will and testament of Colvin Farley.

15.   At about the time plaintiffs engaged the services of Parker, Badger and Fisher and defendant Henry W. Pascarella, Jane B. Farley, as Executrix of the estate of Colvin Farley, had rendered a Final Accounting in regard to that estate in

-- 3 --

SEALED

the Probate Court for the District of Sherman, and a hearing upon the approval of the Final Accounting was imminent.

16.   Prior to the Probate Court hearing upon the approval of the Final Accounting, defendant Henry W. Pascarella, acting on behalf of plaintiffs, contacted the attorneys for the Executrix and made objection to the proposed Final Accounting and advanced certain claims on behalf of plaintiffs.

17.   Among the claims advanced by defendant Henry W. Pascarella on behalf of plaintiffs were an alternative inter-pretation of the last will and testament of Colvin Farley, the invalidity of the last will and testament of Colvin Farley and the partial or total intestacy of his estate, the invalidity of the marriage of Colvin Farley to Jane B. Farley and certain inaccuracies in the Final Accounting.

18.   Had these claims been pursued to a successful con-clusion, plaintiffs' interest in the estate of Colvin Farley could have been substantially increased and the interest of Jane B. Farley could have been substantially decreased and/or extinguished.

19.   Attorneys for Jane B. Farley opposed the claims advanced by defendant Henry W. Pascarella on behalf of plain-tiffs and themselves asserted conflicting claims on behalf of their client.

20.   During the months of June, July, August and October, 1969, defendant Henry W. Pascarella and attorneys for Jane B. Farley conferred and corresponded frequently in an

- 4 -

SEALED

effort to compromise the conflicting claims to the mutual
satisfaction of their respective clients.

21.   During this period of negotiation the primary
attention of the attorneys and the parties was focused upon the
single most substantial asset of the Colvin Farley estate,
119 shares of common stock in a closely held Connecticut cor-
poration known as Timber Trails, Inc.

22.   For most of his adult lifetime Colvin Farley had
been the controlling stockholder and president of Timber Trails,
Inc.  That corporation, acting through Colvin Farley, had
as its sole purpose the ownership, development and operation of
a leisure-time and residential development on a tract of land
comprising approximately 1500 acres located in Sherman,
Connecticut and New Fairfield, Connecticut.

23.   Prior to his death, Colvin Farley had managed a
country inn located at Timber Trails and had developed
recreational facilities for boating, fishing, horseback riding,
tennis and skiing on the Timber Trails property.  Additionally,
a limited number of single family residences had been con-
structed on individual lots sold by the corporation to certain
individuals who eventually formed a voluntary association
known as the Timber Trails Homeowners Association.

24.   At the time of Colvin Farley's death, and
to the present time, the Timber Trails property, which had been
owned and controlled by the Farley family for two generations,

- 5 -

SEALED

remained largely undeveloped.   It remains primarily a rural area of forests, lakes, streams, and fields of great natural beauty, and has a fair market value of approximately Five Million ($5,000,000.00) Dollars.

25.   Prior to the death of Colvin Farley, Jane B. Farley owned 80 shares of the common stock in Timber Trails, Inc. plus an additional 148 acres of real property contiguous to the property owned by Timber Trails, Inc.

26.   Among the various compromise proposals discussed by the attorneys during their period of negotiations for a settlement of the Farley estate was a "buy out" proposal under the terms of which there would be an agreed upon distribution of the assets of the estate of Colvin Farley and either (1) Jane B. Farley would "buy out" the interests of those making claim against the estate at an agreed upon price and thus own all the Timber Trails, Inc. stock, or (2) those making claim against the estate would "buy out" the interest of Jane B. Farley in the estate of Colvin Farley as well as her personal stock holdings in Timber Trails, Inc. and her personal real estate holdings contiguous to the Timber Trails, Inc. property, at an agreed upon price, and thus own all the Timber Trails, Inc. stock as well as the contiguous property.

27.   As the negotiations between the parties' attorneys were drawing to a close, Jane B. Farley agreed to the following proposal:

  1.   The assets of the estate of Colvin Farley would be divided equally between Jane B. Farley and those, including plaintiffs, making claim against the estate.

-- 6 --

SEALED

2. Jane B. Farley would give a one-year option to purchase, at a fixed price on fixed terms, all her interest in the Colvin Farley estate, as well as the Timber Trails, Inc. stock which she previously owned and the contiguous real estate which she owned.

3. Those making claim against the estate of Colvin Farley, including plaintiffs, would give Jane B. Farley a complete general release of all claims against her individually and as Executrix of the Estate of Colvin Farley.

28. At some time during this period of negotiations, the precise time being unknown to plaintiffs, defendant Henry W. Pascarella, in breach of his fiduciary duties to plaintiffs, commenced to represent his own personal interest, rather than the interests of plaintiffs, and sought for himself a personal financial benefit from opportunities which were rightfully opportunities of the plaintiffs.

29. Thus, on or about October 31, 1969, defendant Henry W. Pascarella unknown to plaintiffs procured from Jane B. Farley for himself, personally, for the consideration of One ($1.00) Dollar, which consideration defendant Henry W. Pascarella paid personally, an option to purchase the following:

(1) A 148 acre parcel of land contiguous to the Timber Trails, Inc. property then owned by Jane B. Farley individually.

(2) The 80 shares of common stock in Timber Trails, Inc. then owned by Jane B. Farley individually.

- 7 -

SEALED

(3)   All common and preferred stock in Timber Trails, Inc. which would in the future be acquired by Jane B. Farley from the estate of Colvin Farley.

(4)   All other assets to be acquired in the future by Jane B. Farley from the estate of Colvin Farley.

30.   The option price for the stock and land was $415,000.00, and the fair market value of the stock and land covered by the option, at the time it was given by Jane B. Farley to defendant Henry W. Pascarella, was in excess of Three Million ($3,000,000.00) Dollars.

31.   This purchase option was given to defendant Henry W. Pascarella by Jane B. Farley with the understanding that his clients, plaintiffs here, would accept a fifty-per cent distribution of the estate of Colvin Farley, and release Jane B. Farley from all further claims, both individually and in her capacity as Executrix of the estate of Colvin Farley, and that the remaining fifty per cent of the Colvin Farley estate would, by agreement, go to Jane B. Farley.

32.   Having obtained this purchase option for himself on October 31, 1969, defendant Henry W. Pascarella thereafter, on November 5, 1969, met with plaintiffs in his office and advised them to settle their claims against the estate of Colvin Farley in exchange for receiving one half the assets of that estate.   He further advised plaintiffs that they should agree to a distribution of the remaining one-half of the assets of the

- 8 -

SEALED

Colvin Farley estate, including 59 shares of common stock in Timber Trails, Inc., to Jane B. Farley and should release Jane B. Farley from all further claims.

33.   In order for defendant Henry W. Pascarella to acquire for himself personally a controlling interest in Timber Trails, Inc., it was necessary for his clients to agree to the distribution which Henry W. Pascarella advised them to accept.  Plaintiffs' agreement to this distribution added 59 shares of common stock in Timber Trails, Inc. to the 80 shares previously owned by Jane B. Farley, thereby giving Jane B. Farley 139 shares of Timber Trails, Inc. common stock, of 200 issued by the corporation.

34.   In view of the fact that defendant Henry W. Pascarella had previously obtained an option to purchase all of Jane B. Farley's common stock in Timber Trails, Inc., including whatever  stock she received from the estate of Colvin Farley, as soon as his clients agreed to the distribution of the Colvin Farley estate which defendant Pascarella advised, defendant Pascarella assured himself of an opportunity to acquire a 69.5% equity ownership, and control of, Timber Trails, Inc.

35.   At no time did defendant Henry W. Pascarella adequately advise plaintiffs that he had obtained the purchase option from Jane B. Farley for his own personal interest and financial gain rather than as their representative, attorney and trustee.

- 9 -

SEALED

On the contrary, plaintiffs were led to believe and did believe
that defendant Henry W. Pascarella had obtained the purchase
option in his capacity as their attorney and for the ultimate
development of the Timber Trails, Inc., property for their
benefit.

36.    At no time did defendant Henry W. Pascarella explain
to plaintiffs that the purchase option which he received
personally was obtained, in part, upon the consideration of the
relinquishment of plaintiffs' claims against the estate of
Colvin Farley.

37.    At no time did defendant Henry W. Pascarella explain
to plaintiffs that the purchase option he obtained had an
inherent value nor did he explain that the option was trans-
ferrable and assignable.

38.    At no time did defendant Henry W. Pascarella explain
that the purchase option which he obtained for himself was
available to plaintiffs upon the same terms, nor did he explain
to plaintiffs the potential opportunities and benefits which
might be obtained by plaintiffs by virtue of the purchase
option.

39.    At no time did defendant Henry W. Pascarella advise
plaintiffs that by virtue of his individual participation in a
legal transaction in which they were involved, they should seek
and obtain the advice of independent counsel to review the
entire transaction, including his role in it.

– 10 –

SEALED

40.   By virtue of specific knowledge which came to
defendant Henry W. Pascarella solely in his capacity as
attorney for plaintiffs, he discovered an opportunity for fin-
ancial gain for his clients and converted this opportunity to
his own personal advantage.

41.   Upon the advice of their attorney, defendant Henry
W. Pascarella, plaintiffs executed a Mutual Distribution
Agreement with Jane B. Farley pursuant to the terms of which
Jane B. Farley acquired 59 shares of common stock in Timber
Trails, Inc., from the estate of Colvin Farley, which, when
added to the 80 shares of common stock in that corporation which
she previously owned, gave her an ownership of 69.5% of the
equity in that corporation as well as control of the corporation.

42.   By virtue of the purchase option which he had
obtained from Jane B. Farley prior to the execution of the
Mutual Distribution Agreement, defendant Henry W. Pascarella
immediately upon the execution of the Mutual Distribution
Agreement by his clients, had the opportunity to acquire 69.5%
of the equity in Timber Trails, Inc. as well as control of the
corporation, at a price substantially less than the fair market
value of the property to be acquired.

43.   Thereafter, during June or July 1970, defendant Henry
W. Pascarella renegotiated the terms of his purchase option with
Jane B. Farley, obtaining for himself, personally, an even more

- 11 -

SEALED

favorable and financially advantageous opportunity to purchase 69.5% of the equity in Timber Trails, Inc. and the contiguous acreage owned by Jane B. Farley.

44. In September 1970, defendant Henry W. Pascarella advised plaintiffs to transfer to him as trustee the common stock in Timber Trails, Inc. which plaintiffs had acquired from the estate of Colvin Farley pursuant to the Mutual Distribution Agreement.

45. Plaintiffs, believing that defendant Henry W. Pascarella was acting as their attorney and trustee in all matters affecting all the Timber Trails, Inc. stock and property, readily agreed to transfer and did transfer their stock in Timber Trails, Inc. to defendant Henry W. Pascarella as trustee.

46. On October 1, 1970 defendant Henry W. Pascarella exercised his purchase option with Jane B. Farley by means of which he was to acquire 69.5% of the common stock in Timber Trails, Inc. plus the 148 acre contiguous parcel of land for a sales price of $405,000.00. The terms of sale required an initial downpayment toward that purchase price of only $25,000.00 and thereafter only payments of interest on the remaining principal sum were required for a period of six years. Payments toward principal, pursuant to the terms of defendant Pascarella's contract with Jane B. Farley, were deferred until December, 1976.

- 12 -

SEALED

47.   In December 1970, defendant Henry W. Pascarella forwarded to plaintiffs general releases to be executed by them in favor of Jane B. Farley which releases were part of the consideration for the purchase by defendant Henry W. Pascarella of the Farley property and stock.

48.   Following the advice of their attorney, plaintiffs duly executed the general releases and returned them to defendant Henry W. Pascarella for transmittal to Jane B. Farley in connection with his closing.

49.   On or about December 28, 1970, defendant Henry W. Pascarella purchased on his own account, 69.5% of the common stock in Timber Trails, Inc. from Jane B. Farley as well as the 148 acre parcel of land contiguous to the Timber Trails, Inc. property, upon the terms set forth in paragraph 46.

50.   Defendant Henry W. Pascarella, by purchasing property which was involved in the transaction being handled on behalf of his clients, breached his fiduciary duty to plaintiffs, and acquired for himself an investment opportunity which should have been acquired by, and solely  for the benefit of, his clients.

51.   As a result of this breach of fiduciary duty, plaintiffs were prevented from acquiring the purchase option from Jane B. Farley, which defendant Pascarella instead acquired for himself.  Thus plaintiffs lost the valuable investment opportunity to acquire ownership and control of

- 13 -

SEALED

all property owned by Timber Trails, Inc. plus that owned by
Jane B. Farley.

52.   This breach of fiduciary duty by defendant Henry
W. Pascarella had as its motivating intent and design the
wilful and wanton deprivation of plaintiffs' valuable property
rights and constituted a breach of his ethical and fiduciary
duty to his clients amounting to malicious and wanton miscon-
duct.

SECOND COUNT - FRAUD

1 - 52.   Paragraphs 1 - 52 of the complaint are hereby
realleged as paragraphs 1 - 52 of the Second Count.

53.   During the course of his representation of plaintiffs,
defendant Henry W. Pascarella knowingly intentionally and
fraudulently refused to disclose to and concealed from plain-
tiffs the opportunity available to plaintiffs to acquire the
purchase option from Jane B. Farley.

54.   During the course of his representation of plain-
tiffs, defendant Henry W. Pascarella, while concealing an
advantageous opportunity from his clients, took advantage of
their opportunity for his own personal investment and financial
gain.

55.   In order to enhance his own personal financial
gain defendant Henry W. Pascarella advised plaintiffs to
compromise and relinquish their claims against the estate of

- 14 -

SEALED

Colvin Farley in order that defendant Henry W. Pascarella could

obtain the purchase option from Jane B. Farley.

56. As a result of the fraud perpetrated by defendant

Henry W. Pascarella upon the plaintiffs, plaintiffs were

prevented from acquiring the purchase option from Jane B. Farley

which defendant Pascarella instead acquired for himself. Thus

plaintiffs lost the valuable investment opportunity to acquire

ownership and control of all property owned by Timber Trails,

Inc. plus that owned by Jane B. Farley.

57. The fraud perpetrated by defendant Henry W.

Pascarella had as its motivating intent and design the wilful

and wanton deprivation of plaintiffs' valuable property rights

and constituted malicious and wanton misconduct.

COUNT THREE - MALPRACTICE

58 - 85. Paragraphs 1 - 27 of the Complaint are hereby

realleged as paragraphs 58 - 85 of the Third Count of the

Complaint.

86. The purchase option which Jane B. Farley was willing

to give in connection with the settlement of the Colvin Farley

estate extended for a period of one year, could have been

obtained for the consideration of One Dollar, was transferable

and assignable and required an ultimate purchase price of

substantially less than the fair market value of the property

subject to the option.

- 15 -

SEALED

87.   This purchase option represented a valuable investment opportunity to plaintiffs which would have permitted them, at a relatively small capital investment, to acquire ownership and control of all the Timber Trails, Inc. stock as well as the 148 acre parcel of land contiguous to the Timber Trails, Inc. property.

88.   Defendant Henry W. Pascarella while acting as attorney for plaintiffs in all matters arising out of the settlement of the Colvin Farley estate, has failed to advise plaintiffs of their opportunity to acquire the stock in Timber Trails, Inc. and contiguous real estate, has failed to explain adequately the inherent value of the option agreement and the opportunities available to plaintiffs arising from the exercise of the option agreement, has failed to explain to plaintiffs the true nature of his personal involvement in the transaction separate and apart from his role as attorney, trustee and representative, has failed to advise plaintiffs to obtain another independent attorney to represent them under the circumstances, has failed to keep plaintiffs fully informed of what was transpiring so that plaintiffs could take action to protect their interests, and has commingled his personal interests with plaintiffs interests.

89.   In failing to make these explanations and in failing to give this advice to plaintiffs, defendant Henry W. Pascarella failed to exercise the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated.

- 16 -

SEALED

90. The failure of defendant Henry W. Pascarella to exercise the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated caused plaintiffs to lose the valuable investment opportunity to acquire ownership and control of all property owned by Timber Trails, Inc. plus that owned by Jane B. Farley.

FOURTH COUNT - BREACH OF CONTRACT

91 - 133. Paragraphs 58 - 90 of the Third Count of this Complaint are hereby realleged as paragraphs 91 - 133 of the Fourth Count.

134. The failure of the defendant Henry W. Pascarella to make these explanations and give this advice to plaintiffs constituted a breach of the employment contract entered into by plaintiffs and the firm of Parker, Badger and Fisher, acting through its partner, defendant Henry W. Pascarella.

PLAINTIFFS CLAIM:

1. FIVE MILLION ($5,000,000.00) DOLLARS DAMAGES.

2. THE IMPOSITION OF A CONSTRUCTIVE TRUST UPON THE PROPERTY ACQUIRED BY DEFENDANT PURSUANT TO HIS PURCHASE OPTION, AND EVENTUAL PURCHASE, FROM JANE B. FARLEY AND A CONVEYANCE OF SAID STOCKS AND PROPERTY TO PLAINTIFFS.

3. AS PUNITIVE AND EXEMPLARY DAMAGES, THE ATTORNEYS' FEES INCURRED BY PLAINTIFFS IN PROSECUTING THIS ACTION.

4. A PRELIMINARY AND PERMANENT INJUNCTION DURING THE

- 17 -

SEALED

PENDENCY OF THIS ACTION RESTRAINING DEFENDANT HENRY W.

PASCARELLA FROM TAKING ANY ACTION ON BEHALF OF TIMBER TRAILS,

INC. WHICH WOULD RESULT IN THE DEPLETION OR WASTE OF ITS

ASSETS AND FROM TRANSFERRING ANY ASSETS OF TIMBER TRAILS, INC.

AND FROM THE SALE, TRANSFER, PLEDGE OR ALIENATION OF ANY STOCK

IN TIMBER TRAILS, INC. NOW REGISTERED IN HIS NAME OR IN THE

NAME OF ANY MEMBER OF HIS IMMEDIATE FAMILY.

    Dated at Bridgeport, Connecticut this 1st day of June 1974.


_____
Charles M. Needle


_____
L. Douglas Shrader

      Attorneys for Plaintiffs

      333 State Street
      Bridgeport, Connecticut  06604

      Telephone:  333-9441

- 18 -

SEALED

IN THE

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SARA FARLEY LOKEN, <br> GERALDINE B. FARLEY, | ) <br> ) <br> ) | |
| Plaintiffs | ) <br> ) | |
| v. | ) <br> ) | CIVIL ACTION <br> NO. |
| HENRY W. PASCARELLA, Individually and <br> DANIEL B. BADGER, JOSEPH W. BARNETT, JR., <br> CHARLES S. BRADFORD, BRUCE F. COHEN, <br> EVERETT FISHER, BRADFORD S. MAGILL, <br> DONAT C. MARCHAND, MILES F. McDONALD, JR., <br> HENRY W. PASCARELLA, DUNCAN C. SMITH d/b/a <br> MAGILL, BADGER, FISHER, COHEN & BARNETT, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants | ) | |

APPLICATION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65, Federal Rules of Civil Procedure, and upon the verified complaint hereto attached, plaintiffs respectfully move the Court to enter a preliminary injunction against defendant Henry W. Pascarella, his agents, servants, employees attorneys, partners and all persons in active concert or participation with him, restraining them from taking any action on behalf of Timber Trails, Inc. which would result in the depletion or waste of its assets, and from transferring any assets of Timber Trails, Inc., and from the sale, transfer, pledge or alienation of any stocks in Timber Trails, Inc. now registered in his name.

SEALED

PLAINTIFFS

By_____

　　　Charles M. Needle

_____

　　　L. Douglas Shrader

Attorneys for Plaintiffs

　　333 State Street
　　Bridgeport, Connecticut
　　Telephone:   333-9441

- 2 -

SEALED

# EXHIBIT B

# DAMAGES

# Res Judicata Decision Timeline and Related Litigation

1  PASCARELLA, HENRY Et Al v. SILVER, ROBERT Et Al (File Date: 08/15/2016)
2  JPMORGAN CHASE v. PASCARELLA, HENRY W., AS TR. (File Date: 11/05/2018)
3  NORTHEAST COMMUNITY BANK v. WH PARCEL II, LLC (File Date: 01/15/2019)
4  R.S. SILVER ENTERPRISES v. RIVERSEDGE PARTNERS (File Date: 08/30/2019)
5  READYCAP COMMERCIAL, LLC v. WH PARCEL I, LLC (File Date: 10/31/2019)

No decision on res judicata :



SEALED

EXHIBIT C

CONSEQUENTIAL
DAMAGES

DOCKET NO.: FST-CV16-6029529-S

HENRY PASCARELLA, ET AL.

V.

ROBERT SILVER, ET AL.

SUPERIOR COURT

J.D. OF STAMFORD

AT STAMFORD

JANUARY 7, 2021

SEALED

## MEMORANDUM OF DECISION

### I.     BACKGROUND

This is the latest installment in litigation which has raged between the parties, associated entities and their principals since at least 2003 arising out of a document which the parties refer to as a "Participation Agreement" "made and entered into as of March 3, 1997" by Robert Silver acting on behalf of the R.S. Silver & Co. (Silver)[1] and by Henry Pascarella acting both individually and as "a managing partner" of S.P.D. Associates, a Connecticut General Partnership.[2] The Participation Agreement provided Silver with certain rights related to a 46,000 square foot office building and property located at 200 Pemberwick Road in Greenwich,

---

[1] The rights of R.S. Silver and Company are now owned by the defendant Robert S. Silver Enterprises Co., Inc. R.S. Silver Enterprises Co., Inc. was the plaintiff in earlier litigation referred to herein as the 2006 Action. For purposes of this memorandum "Silver" will be used to refer to either R.S. Silver and Company or R. S. Silver Enterprises Co., Inc. as the latter is the successor in interest to the former.

[2] The defendant Riversedge Partners, a general partnership, was previously known as S.P.D. Associates, a general partnership and referred to as S.P.D. Associates, a general partnership, in the Participation Agreement. Because it is the same entity with a different name all references to the entity will be by its current name Riversedge Partners.

1

*267.00*

Connecticut. In general the Participation Agreement, in consideration of $1,250,000 paid by Silver, provided Silver with the right to receive 50% of the cash distributions generated by the property after the payment of certain specified priority payments. Silver had no right to participate in the management or operation of the property. Pascarella maintained the right to manage the property including the right to determine when and if cash distributions would be made, without interference from Silver. The most significant earlier litigation was the case of *R.S. Silver Enterprises, Inc. v. Henry Pascarella and Riversedge Partners, et al.* brought in the judicial district of Stamford/Norwalk at Stamford, docket number CV065002499S (hereinafter the 2006 Action).

A critical issue raised by the pleadings in the instant case is whether or not, by virtue of the doctrine of res judicata, the judgment in the 2006 action resolved all of the issues between the plaintiffs and Silver arising out of the Participation Agreement, or whether the judgment in the 2006 action adjudicated only Silver's claims for damages arising out of the Participation Agreement through 2008, leaving intact any additional claims that Silver has pursuant to the Participation Agreement based on occurrences subsequent to 2008.

II.     **THE PLEADINGS AND ACTIVITIES IN THE CASE AT BAR**

In their one count complaint the plaintiffs' allege certain events that preceded the 2006 action and then allege that the original 2006 complaint asserted five counts against the plaintiffs arising out of the Participation Agreement including breach of contract, breach of fiduciary duties, request for an accounting, a claim to windup of the purported partnership that Silver, in the 2006 Action, alleged existed, a partition of the Pemberwick Road property. Silver amended his complaint in January of 2009, shortly before the trial of the 2006 action, retaining the breach

2

of contract claim, request for an accounting, breach of fiduciary duties claim and a breach of a separate letter agreement. The plaintiffs herein allege that Silver requested, among other claims for relief, damages and the appointment of a receiver. The instant complaint continues that judgment in the 2006 Action entered in favor of Silver for a total amount of $1,782,848 plus prejudgment interest in the amount of $819,475. That judgment was affirmed on appeal to the Connecticut Appellate Court and in March of 2016 the Connecticut Supreme Court denied Pascarella's and Riversedge Partners' Petition for Certification. The judgment obtained by Silver then became final. The complaint continues that Silver brought two other actions in 2011 and 2012. The 2011 Action was withdrawn. The 2012 action asserted that Silver was seeking to recover distributions under the Participation Agreement that had accrued to its benefit after December 31, 2008 which is the last year for which Silver had introduced evidence of damages in the 2006 Action. Pascarella and Riversedge Partners moved for summary judgment in the 2012 action but Silver withdrew the 2012 action without responding to or objecting to that motion for summary judgment. The instant complaint further alleges that the plaintiffs have a bonafide concern that the defendant will attempt to commence yet another lawsuit against the plaintiffs in an effort to claim that the defendants are entitled to recover distributions under the Participation Agreement despite the res judicata effect of the judgment in 2006. The plaintiffs further allege that Silver has recently made statements in the real estate market place that he continues to hold an interest in the property which creates a cloud on ownership and negatively impacts the ability of Riversedge Partners to manage the Pemberwick Road property. In this action the plaintiffs seek a declaratory judgment that as a result of the entry of judgment in favor of the Silver in the 2006 Action, which judgment liquidated all claims Silver could claim

3

under the Participation Agreement, Silver has no continuing or ongoing rights, interest or
entitlements whatsoever under the Participation Agreement. The plaintiffs also seek an award of
attorneys fees and other orders as the court deems just improper.

The defendant in turn filed an answer, special defenses and counterclaims. In its answer
it pleads insufficient knowledge or denies most of the material allegations of the complaint
other than those relating to matters of record in the 2006 Action.

Silver's first special defense is that in the 2006 Action Silver only sought damages through
2008 and that Silver could not have sought damages for future distributions because the
Participation Agreement provided Pascarella with sole and exclusive discretion as to when cash
distributions would be made, that the court in the 2006 action found that the Participation
Agreement was divisible and the defendant was entitled to damages through 2008. The first
special defense continues that Silver knowingly refrained from asserting rights to argue that the
breach of the Participation Agreement was total. Silver's second special defense is that
Pascarella is estopped by its prior actions and positions in the 2006 action from asserting that
their breach of the Participation Agreement was total and indivisible and in its third special
defense Silver asserts that the plaintiffs herein are barred by the doctrines of collateral estoppel
and res judicata from asserting that the Participation Agreement is not in full force and effect.

Not surprisingly, Silver has asserted a counterclaim seeking a declaratory judgment that
the Participation Agreement is in full force and effect and that based on the doctrines of res
judicata and collateral estoppel Silver has continuing and ongoing rights under the Participation
Agreement to receive 50% of all cash distributions made after December 31, 2008 and that
Pascarella is to provide annual operating reports of Riversedge Partners to Silver. In the second

4

count of the counterclaim Silver seeks a constructive trust. In the third count Silver alleges that Pascarella has breached the covenant of good faith and fair dealing which is a part of the Participation Agreement. In the fourth count Silver seeks an accounting. In its prayer for relief Silver seeks a declaratory judgment, monetary damages, punitive damages, interest on all sums awarded as allowed by law, an accounting and a constructive trust.

SEALED

The plaintiffs have filed two motions for summary judgment based on their claims that, under the doctrine of res judicata, Silver's rights under the Participation Agreement had been adjudicated by virtue of the judgment of the 2006 Action. Both Motions for Summary Judgment were denied and plaintiffs' appeals of each denial were dismissed.

The plaintiffs herein filed a motion to bifurcate the trial which the court granted. Pursuant to the court's order, the trial of the issue of res judicata raised by the pleadings would be bifurcated and held first. That trial occurred on September 30, 2020.

At the bifurcated trial on the res judicata issue there were two witnesses. Aldo Pascarella, the son of Henry Pascarella, appeared on behalf of Riversedge Partners. He testified that the partnership was having difficulty refinancing the property because of the claims that Silver was making. He also testified that the property had become financially distressed and that the property is currently in foreclosure. Robert Silver testified about his objectives in the 2006 Action. The parties agreed to introduce as evidence multiple exhibits most of which were either exhibits, pleadings or decisions in the 2006 Action. Indeed, ultimately the resolution of this action will be based upon the court's determination of the meaning of the filings and the judgment in the 2006 Action.

5

III.   THE 2006 ACTION

SEALED

The 2006 action began with a complaint dated September 15, 2006 in which R.S. Silver

Enterprises Co., Inc. brought an action against Henry Pascarella and Riversedge Partners

alleging that Silver and Pascarella individually and as managing partner of Riversedge Partners

for consideration of $1,250,000 paid by Silver entered into a written Participation Agreement.

In the original 2006 complaint Silver alleges that as a result of the conduct of the defendants in

violation of the terms of the participation agreement "the plaintiff has been and *will continue to

be irrevocably harmed* for which he has no adequate remedy of law." (Emphasis added.) The

second count alleged breaches of fiduciary duty, the third count sought an accounting, the fourth

count sought a winding up of the partnership affairs pursuant to C.G.S. § 43-372 (5) on the

grounds that "the economic purpose of the partnership has been frustrated", and the fifth count

referenced an earlier letter agreement which provided the plaintiff therein with a 50% interest in

the property and claimed right consistent with that letter agreement.

The original complaint in its prayer for relief sought monetary damages, court costs,

interest, an accounting of the partnership assets, a decree dissolving the partnership in

accordance with law, a temporary and permanent injunction enjoining the defendants from

transferring or encumbering any asset of the partnership until further order of the court, the

appointment of a receiver over the affairs of the partnership, a partition of the 200 Pemberwick

Road property and such other relief as the plaintiff may be justly entitled to receive. The

allegations of the various counts of the original complaint allege that pursuant to the

Participation Agreement Silver acquired "a *partnership interest* in [Riversedge Partners]"

(Emphasis added.) The original complaint further alleged that since Silver acquired his

6

"partnership interest" Pascarella has exclusively controlled and managed the affairs of the
partnership without reporting or accounting to Silver.

SEALED

Silver filed an amended complaint in the 2006 Action dated November 21, 2017. In the
November 21, 2007 amended complaint Silver did not allege that it acquired a "partnership
interest" but rather alleged that pursuant to the Participation Agreement it acquired an "equity
interest in [Riversedge Partners]". The amended complaint further alleged that Pascarella and
Riversedge Partners failed to provide Silver with annual operating statements and financial
reports in violation of their obligations under the Participation Agreement and that both had
taken actions inimical to the interest of Silver. The second count of the amended complaint
sought an accounting; the third count alleged a breach of fiduciary duty by Pascarella, the fourth
count sought a dissolution and winding up of the affairs of Riversedge Partners, the fifth count
asserted a claim in unjust enrichment, the sixth count alleged misrepresentations, the seventh
count asserted claims based on the written letter agreement dated March 3 which preceeded the
Participation Agreement, the eighth count alleged a breach of the letter agreement, the ninth
count alleged an unjust enrichment, and the tenth count alleged fraudulent misrepresentations.

The prayer for relief in the November 21, 2007 amended complaint sought monetary
damages, court costs, interest, an accounting of the partnership assets, a decree dissolving the
partnership in accordance with law, a temporary and permanent injunction enjoining the
partnership from transferring or otherwise encumbering any asset of the partnership, an
appointment of a receiver, a partition by sale of the property and such further relief to which the
plaintiff was justly entitled.

However, on January 26, 2009 the plaintiff filed a request for leave to amend the

7

complaint and a proposed amended complaint for the trial of the 2006 Action which began

shortly thereafter on February 4, 2009 and continued before the court for 10 non-consecutive

days eventually concluding on March 11, 2009. The January 26, 2009 amended complaint

became the operative complaint for the trial without objection from Pascarella or Riversedge

Partners. The operative complaint in the first count alleged that Silver entered into a written

agreement entitled the Participation Agreement whereby Silver acquired for the sum of

$1,250,000 an equity interest in Riversedge Partners. In the first count of the operative

complaint Silver alleged that as a result of the defendants' breach of the Participation

Agreement it "has been damaged." The second count sought an accounting, the third count

alleged a breach of fiduciary duty on the part of Pascarella, and the fourth count alleged a

breach of the March 3, 1997 letter agreement which preceded the Participation Agreement. Not

only was the January 26, 2009 complaint paired down in terms of its allegations and counts, but

the prayer for relief sought monetary damages, punitive damages, interest, an accounting, costs

and the appointment of a receiver "during the pending (sic) of this action". The January 26,

2009 prayer for relief no longer sought a partition of the 200 Pemberwick Road property or a

winding up of the affairs of the partnership. Nor did it seek injunctive relief.

Prior to the filing of the operative complaint, on May 14, 2018, Silver had filed a

plaintiff's Disclosure of Expert Witness disclosing a Certified Public Accountant and disclosing

the subject matter upon which his expert would testify. That disclosure indicated that the expert

would testify not only to the cash distributions that had been made by Riversedge Partners (the

basis for the amounts due Silver) but also that Riversedge Partners would have the ability to

continue to make cash distributions of the same or similar amounts for successive years based

8

on the same financial assumptions. In the 2006 action the plaintiff filed a civil trial

management order dated January 13, 2009, and included in its recitation on the Connecticut law

on damages the following quotation: "[U]nless they are too speculative and remote, prospective

profits are allowable as an element of damage whenever their loss arises directly from and as a

natural consequence of the breach."

The plaintiff began the trial with the four count operative complaint but at the outset of

the trial the parties agreed that the second count, requesting an accounting, sought a remedy that

would only arise if the plaintiff prevailed on its count one, the breach of contract claim. With

the agreement of the parties, the court deferred any consideration of the request for an

accounting until after its decision as to liability on the first count. At the conclusion of the

plaintiff's case the court dismissed count four which was based on the  March 3, 1997 letter

agreement because the Participation Agreement by its terms provided that "no prior or

contemporaneous agreement or understanding pertaining to the same shall be of any force or

effect". In its thorough 53-page decision issued on July 14, 2010 the court (Jennings, J.) found

in favor of Pascarella on the third count sounding in breach of fiduciary duties. The court in that

decision found in favor of Silver on the first count as to liability only and noted that the parties

had stipulated that the issue of the accounting would be deferred until the issue of liability for

breach of contract had been determined. The court further noted that even though the plaintiff

did present an expert witness who testified extensively on damages it was unclear to the court if

the plaintiff was still seeking an accounting to develop additional evidence on the issue of

damages. For that reason the court made no ruling on damages in its July 14, 2010

Memorandum of Decision but deferred ruling on damages and entered an order requiring the

9

plaintiff to file a supplemental memorandum indicating whether or not further proceedings were

requested on the accounting, and if so the scope of such proceedings contemplated by the

plaintiff. The plaintiff was also requested to list in that memorandum each item in the prayer for

relief and demand for relief attached to the January 26, 2009 complaint that it was still seeking.

The court gave the defendants an opportunity to respond to that memorandum and reserved

decision on damages and the accounting until that time. The parties complied with that court

order and on April 25, 2012 the court issued another decision regarding the accounting and the

request for damages on count one. The court ruled that an accounting was not necessary and

that it would not order an accounting. The court in its April 25, 2012 Memorandum also ruled

against the plaintiff with regard to its request in its prayer for relief for a receiver. The court

wrote "there is no claim in this case for damages consisting of the plaintiffs half of partnership

distributions after the year 2008." The plaintiff made it clear it was only seeking an accounting

to develop evidence of damages seeking distributions "during those years [2007 and 2008]".

The court took judicial notice of the action began by Silver on January 11, 2012 subsequent to

the trial of the 2006 action and subsequent to its July 14, 2010 decision against the same

defendants for the breach of the same Participation Agreement claiming damages which

included the alleged failure of the defendants to pay the plaintiff one half of the cash

distributions resulting from the operation of Riversedge Partners. The court wrote "to the extent

the plaintiff is claiming damages incurred in 2009 and thereafter they would be part of the

damages claimed in that new action . . . ." This court takes judicial notice of the fact that the

January 11, 2012 action referenced by the court has been withdrawn. The court ultimately ruled

that Silver was entitled to 50% of the distributions to partners made by Riversedge Partners

10

after certain priority payments had been made. The court made findings with regard to those

distributions based upon the testimony of Silver's expert for 1997, 1998, 2000, 2001, 2003,

2004, 2006, 2007, and 2008, and after accounting for the priority payments to Pascarella and

other credits, the court concluded that the plaintiff was entitled to 50% of the distributions, after

those priority payments, equal to $1,782,849 plus interest. The court specifically itemized the

distributions that generated that 50% entitlement for 2003, 2004, 2005, 2006, 2007 and  2008.

The court awarded interest pursuant Connecticut general statute § 37-3a in the amount of

$819,475.

IV.    DISCUSSION

        The heart of the plaintiffs' claim is that "based on the doctrine of res judicata, Silver has

no continuing or ongoing rights under the Participation Agreement." The plaintiffs assert that in

bringing the 2006 action Silver asserted claims for damages, both past and future, and under

traditional res judicata principles is barred from bringing this counterclaim or any future actions

asserting additional claims or rights under the Participation Agreement. Consistent with that

position the plaintiff seeks a declaratory judgement that Silver has no continuing or ongoing

rights under the Participation Agreement, and that it liquidated its claim in the 2006 Action and

is prohibited from bringing any future actions under or relating to the Participation Agreement.

Similarly, the plaintiffs assert as their first special defense to defendant's counterclaim that the

counterclaim is barred by the principle of claim preclusion under the res judicata doctrine.

        The general principles of the doctrine of res judicata has been summarized by the Connecticut

Supreme Court as follows.

        Res judicata, or claim preclusion, expresses no more than the fundamental

11

principle that once a matter has been fully and fairly litigated, and finally decided it comes to rest. Generally for res judicata to apply four elements must be met: (1) the judgement must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully and (4) the same underlying claim must be at issue.

*Wheeler v. Beachcroft, LLC,* 320 Conn. 146, 156-157 (2016) (Internal citations and quotations omitted).

The parties do not disagree that the first two elements are present in the case at bar. Specifically the 2006 Action resulted in a judgment by a court of competent jurisdiction and the parties to the 2006 action were the same or in privity with the parties in the present action. Their disagreement centers on whether or not there was an adequate opportunity to litigate the matter fully and whether the same underlying claim is at issue. The plaintiff argues that "[r]es judicata bars the relitigation of claims actually made in the prior action *as well as any claims that might have been made there.* Public policy supports the principle that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." *Id.* at 157 (Internal citations and quotations omitted). In determining whether subsequent claims are barred under res judicata principles, Connecticut has adopted a transactional test. Under the transactional test res judicata extinguishes "all rights of the parties to remedies against the defendant with respect to all or any part of a transaction, or series of connected transactions, out of which the action arose." *Id.* at 159 (Internal citations and quotations omitted).

In *Landmark Investment Group, LLC v. Chung Family Reality Partnership, LLC,* 137 Conn. App. 359 (2012) the Appellate Court had the opportunity to apply traditional res judicata principles to a breach of contract claim. The *Landmark Investment Group* case noted that the

12

specific issue in the original litigation was the enforceability of a specific purchase and sale

agreement. The trial court had found that the agreement was enforceable and that the defendant

had breached it in several ways. The second *Landmark Investment Group* case alleged a breach

of the same contract by virtue the fact that the defendant/seller failed to keep its property taxes

current and that the defendant/seller had allowed the property which was the subject of a

purchase and sale agreement to become subject to a foreclosure action for failure to pay real

estate property taxes. Notwithstanding significant overlap in the cases and the fact that the seller

was in arrears in his property tax at the time of the trial of the original action, the court found

that the cases were sufficiently distinct "to elude the application of the doctrine of res judicata"

*Id.* at 368. The court determined that the event which constituted the breach in the second action

(the institution of a property tax foreclosure action) had occurred after the judgment alleged by

the defendants to have preclusive effect. The *Landmark Investment Group* court wrote:

> Pursuant to a comment to the Restatement section articulating the transactional
> test for res judicata, which Connecticut cases employ, [m]aterial operative facts
> occurring *after* the decision of an action with respect to the same subject matter
> may in themselves, or *taken in conjunction with the antecedent facts*, comprise a
> transaction which may be the basis of a second action not precluded by the first .
> . . .

*Landmark Investment Group, LLC* at 368, citing 1 Restatement (Second), Judgments § 24, (f).

See also *Cadle Company v. Gable*, 69 Conn. App. 279 (2002).

In the instant case Silver argues that his claims are not barred by the doctrine of res

judicata because they concern breaches of the Participation Agreement that occurred after the

trial of the 2006 Action. Moreover, Silver claims that he could not have proceeded to claim

future damages at the trial of the 2006 Action because under the express terms of the

Participation Agreement he was only entitled to 50% of the cash distributions, but that the

13

determination as to issue cash determinations was solely within the unfettered discretion of Pascarella. The issue before this court is somewhat complicated by virtue of the changes in the various complaints and other documents filed by Silver during the 2006 Action. While the initial complaint references a partnership interest and seeks a decree dissolving the partnership and a partition of the subject property, by the time the case was tried Silver had filed a significantly paired down complaint which did not allege a partnership agreement but alleged a breach of the Participation Agreement. The court in the 2006 action adjudicated the first count of the four-count amended complaint as a simple breach of contract claim. In applying the principles of res judicata more weight must be placed on the operative complaint upon which the parties went to trial, particularly when there was no objection to the amendment to the complaint.

In determining the applicability of the preclusive effects of res judicata, the court cannot ignore the substantive law of contracts applicable to the 2006 Action. The intersection of these principles can best be explained by reference to the various principles set forth in the Restatement of Law (Second) relating to both judgments and contracts. Section 24 of the Restatement (Second) on Judgments in subsection (1) states: "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rule of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." However, § 26 outlines certain circumstances when the general rule of § 24 does not apply to extinguish the claim. The commentary to section 26 observes the following:

> g. *Contracts - plaintiff's option in case of material breach.* A judgment in an

14

action for breach of contract does not normally preclude the plaintiff from thereafter maintaining an action for breaches of the same contract that consist of failure to render performance due after commencement of the first action. . . . But if the initial breach is accompanied or followed by a "repudiation" (see Restatement (Second) Contracts, section 250), and the plaintiff thereafter commences an action for damages he is obliged to avoid "splitting", to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract.

Restatement (Second) Judgments § 26 comment (g).

In the absence of further clarification, an argument could be made that the nature of

Pascarella's and Riversedge Partner's conduct and action prior to the 2006 litigation and within

the 2006 litigation constituted repudiation and therefore required the plaintiff to bring his claim

for past and future damages or suffer the preclusive effect of res judicata. However, regardless

of whether Pascarella's conduct constituted repudiation, the rights of Silver are impacted by the

principles of law set forth in the Restatement (Second) Contracts § 243. Section 243 is entitled

"Effect of a Breach by Non-Performance as Giving Rise to a Claim for Damages for Total

Breach". Subsection (3) states:

> (3) Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, *whether or not accompanied or followed by a repudiation*, does not give rise to a claim for damages for total breach.

Restatement (Second) Contracts § 243 (3) (Emphasis added)

In the present case at the time of the 2006 litigation Silver had completely performed its

obligations under the contract which in effect were limited to the payment of $1,250,000. The

only obligations left pursuant to the Participation Agreement were obligations of Pascarella and

Riversedge Partners who were obligated to pay money to Silver, not in installments, but as such

15

time as they took cash distributions. Because Silver had completely performed his obligations under the contract and the only remaining duties of performance were those of Pascarella and Riversedge Partners who were in breach, under the rule referenced in the Restatement, Silver could not have brought an action for total breach, or at least had the right to elect a remedy to sue for partial breach and insist upon performance of the contract in the future[3]. That position is reflected in the operative complaint in the 2006 action, the evidence actually elicited at trial and both the July 14, 2010 and April 25, 2012 Memorandums of Decision.

Of similar import are the holdings in cases such as *Prime Management Co. Inc v. Steinegger*, 904 F. 2d 811 (1990) and *Technomarine SA v. Giftports, Inc.*, 758 F. 3d. 493 (2014). In *Prime Management* the court wrote:

> While a previous judgment may preclude a litigation of claims that arose "prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." . . . Thus, when the parties have entered into a contract to be performed over a period of time and one party has sued for a breach, res judicata will preclude the party's subsequent suit for any claim of breach that had occurred prior to the first suit; it will not, however, bar a subsequent suit for any breach that had not occurred when the first suit was brought.

*Prime Management* at 816. Thus the *Prime Management* court allowed a landlord to bring a subsequent action for rent due subsequent to the initial action even though the initial actions involved disagreements as to the methodology for calculating rent. Similarly, in *Technomarine* the court wrote "when a subsequent action involves a claim over ongoing conduct and it relies

---

[3]   But see Restatement (Second) Contracts, section 243, comment (d), which observes other remedies which might be available to a non breaching party such as reliance on an acceleration clause. The Participation Agreement contains no such acceleration clause.

16

on facts that occurred both before and after the earlier action commenced, claim preclusion will

not bar a suit . . . based upon legally significant acts occurring after the filing of a prior suit that

was itself based upon earlier acts." *Technomarine* at 501.

This is not to say that the doctrines of res judicata and collateral estoppel can not

provide efficiencies to the parties and the court in this litigation. While the doctrine of res

judicata (or claim preclusion) will not result in preclusion of Silver's claim, the doctrine of

collateral estoppel (or issue preclusion) may preclude the plaintiffs from relitigating any issues

relating to the enforceability of the Participation Agreement.[4] See also *Klein v. John Hancock*

*Mutual Life Insurance Company*, 683 F. 2nd 358 (1982)

There is an additional and perhaps simpler reason why the plaintiffs cannot prevail on

their claims based upon res judicata based upon a principle also set forth in clear language in

the Restatement (Second) Judgments. Section 26 entitled "Exceptions to the General Rule

Concerning Splitting", states in pertinent part:

> (1) when any of the following circumstances exist, the general rule of § 24 does
> not apply to extinguish the claim, and part or all of the claim subsists as a
> possible basis for a second action by the plaintiff against the defendant: . . . (b)
> *The court in the first action has expressly reserved the plaintiff's right to*
> *maintain the second action. . . .*

Restatement (Second) Judgments § 26 (Emphasis added). In its subsequent Memorandum of

Decision dated April 25, 2012 regarding damages and in particular in response to Silver's

request for a receiver the court wrote:

---

[4]    The court will not now decide the applicability of the doctrine of collateral
estoppel to issues that may or may not be raised by the plaintiff because it had
previously bifurcated the trial limiting the issues in this portion of the case to res
judicata issues and there are special defenses alleged by the plaintiffs that may
impact the resolution of that issue.

17

That request for appointment of a receiver is denied for several reasons. First and foremost, it has not been pleaded and consequently has not been tried. . . . There is no claim in this case for damages consisting of plaintiff's half of partnership distributions after the year 2008. In the same brief that requests the receivership, plaintiff made it clear that it was only seeking an accounting to develop evidence of damages relating to distributions "during [2007 and 2008]." Finally, the court takes judicial notice of a new related civil action returnable to this court on January 11, 2012 (Docket No. CV11-5013782S) commenced by the plaintiff against these same defendants for breach of the same Participation Agreement, claiming damages which include the alleged failure of defendants "to pay to the plaintiff one half of the cash distributions resulting from the operations of [Riversedge Partners]." To the extent that the plaintiff is claiming damages incurred in 2009 and thereafter they would be part of the damages claimed in that new action, which has a claim for the appointment of a receiver during the pendency of the action.

2006 Action, Memorandum of Decision dated April 25. 2006 (Jennings, J.) at 9-10. (Internal quotations and citations omitted). Thus, Judge Jennings expressly reserved to Silver the right to proceed with his damages claims in the later action. For purposes of the application of the res judicata doctrine it does not matter that the originally referenced particular action has been withdrawn. What matters is that Judge Jennings expressly reserved to the plaintiff the right to maintain a second action.

There may or may not be other defenses available to Pascarella based on Silver's conduct between 2009 and the present time but the defense of res judicata is not applicable because Judge Jennings acknowledged the pendency of a subsequent case and acknowledged Silver's right to pursue a claim for damages that arose as a result of post 2008 conduct which was in breach of the obligations arising out of the Participation Agreement. This was done in the face of conflicting positions of the parties in the 2006 action as to whether or not the plaintiff could proceed in its claim for prospective damages in the 2006 action.

18

While the parties have not cited nor has the court found any Connecticut cases which have expressly adopted the principles set forth in § 26 (1)(b) of the Restatement (Second) Judgments, this court believes that the principle is sound and particularly applicable to the facts of the case at bar. Thus, in addition to the prior reasons based upon Silver's contract rights, because Judge Jennings, in his Memorandums of Decision, expressly provided for the plaintiff to proceed in a separate action for damages subsequent to 2008, this court will not bar Silver from pursuing claims for subsequent breaches in accordance with the express language of that earlier Memorandum of Decision.

V.   CONCLUSION

For all these reasons the court rules that the plaintiffs cannot prevail on their claim based upon res judicata principles and that the doctrine of res judicata will not bar the claims asserted in Silver's counterclaim. The matter is continued for further proceedings consistent with this opinion.

BY THE COURT,

Genuario, J.

DECISION ENTERED IN ACCORDANCE WITH THE FOREGOING ON 1/7/21. JDNO SENT 1/7/21.

19